IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HEATHER BLAISE,

    Plaintiff,

    v.

TRANSWORLD SYSTEMS INC,

    Defendant.

No. 21-cv-05791
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Plaintiff Heather Blaise (Blaise), on behalf of herself and all others similarly situated, brought this class action lawsuit against Defendant Transworld Systems Inc. (Transworld) in the Circuit Court of Cook County, Illinois, under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), after which Transworld removed this suit to federal court. R. 3-1, Compl.; R. 3, Notice of Removal.[1] Currently before the Court is Blaise's Motion to Remand the case to the Circuit Court of Cook County under 28 U.S.C. § 1447(c) based on the Court's lack of subject matter jurisdiction. R. 8, Mot. Remand. For the following reasons, the Court grants Blaise's motion to remand.

## Background

On or about March 11, 2021, Blaise received a letter from a third-party letter vendor on behalf of Transworld, a debt collection agency (the Letter). Compl. ¶¶ 5, 19. According to the Letter, Blaise allegedly owed a debt to a medical provider for

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

dermatology treatment. *Id.* ¶ 2. The Letter bears markings that indicate it was generated by a letter vendor, including numbers and barcodes found on the Letter. *Id.* ¶ 24. In order for the vendor to send Blaise the Letter, Transworld had to provide, and did provide, the vendor with Blaise's name and address, the status of Blaise as a debtor, details of the alleged debt, and other personal information. *Id.* ¶¶ 27–28. The vendor used this information to populate a prewritten template which was printed and mailed to Blaise on behalf of Transworld. *Id.* ¶ 29. Blaise alleges that, because she did not give consent, the disclosure of her personal information to the vendor violated § 1692c(b) of the FDCPA. *Id.* ¶¶ 30–37. Blaise further alleges that the Letter was mailed in an envelope (the Envelope) with a clear window that revealed her name and address, as well as her personal email address, that was visible from the outside of the Envelope, in violation of § 1692f(8) of the FDCPA. *Id.* ¶¶ 38–48. According to Blaise, a third party saw her email address before Blaise received the Letter. *Id.* ¶ 43.

Blaise filed this class action lawsuit against Transworld in the Circuit Court of Cook County alleging violations of the FDCPA. Compl. Transworld removed the suit to federal court. R. 1, Notice of Removal. Blaise now moves to remand the suit to the Circuit Court of Cook County based on the Court's lack of subject matter jurisdiction. *See* Mot. Remand.

## Legal Standard

A defendant may remove a case filed in state court that could have been filed originally in federal court. 28 U.S.C. § 1441; *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). The removing party bears the burden of demonstrating the

propriety of removal, and any doubt regarding jurisdiction should be resolved in favor of remand. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). The Court may remand a case for lack of subject matter jurisdiction at any time before final judgment. 28 U.S.C. § 1447(c).

## Analysis

Blaise alleges in her suit that Transworld violated §§ 1692c(b) and 1692f of the FDCPA. Compl. The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." § 1692(e). § 1692c(b) provides in relevant part:

> [W]ithout the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b)

Under the FDCPA, a plaintiff may recover statutory and actual damages resulting from violations of the FDCPA. *See* 15 U.S.C. § 1692k(a). The issue before the Court is whether Blaise has alleged an injury that satisfies Article III standing.

Before a court can address the merits of a dispute, it must first determine whether it has subject-matter jurisdiction. *See Scott Air Force Base Properties, LLC v. Cnty. of St. Clair, Ill.*, 548 F.3d 516, 520 (7th Cir. 2008). Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies."

3

U.S. CONST. art. III, § 2. "The case-or-controversy requirement ensures that the judiciary 'confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.'" *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022) (quoting *Genesis Healthcorp. v. Symczyk*, 569 U.S. 66, 71 (2013)).

Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The injury-in-fact inquiry "asks whether the plaintiff has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151–52 (7th Cir. 2020) (internal citations and quotations omitted). A concrete injury "must actually exist" and must be "real and not abstract." *Spokeo, Inc.*, 578 U.S. at 340. In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." 578 U.S. at 341. Because Transworld has invoked the Court's jurisdiction, it has the burden to establish that Blaise had Article III standing at the time of removal. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021).

In a strange turn of events—albeit it a common one in FDCPA cases removed to federal court—it is the plaintiff, here Blaise, who argues that the removing

4

defendant, here Transworld, has failed to sustain its burden of establishing Article III standing. Mot. Remand at 3–4. Blaise points out that her complaint merely alleges substantive violations of the FDCPA, which, without more, is no longer sufficient to confer Article III standing. Mot. Remand at 1–2 (citing *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020); *Nettles v. Midland Funding, LLC*, 983 F.3d 896 (7th Cir. 2020)). Rather, a plaintiff must have suffered a specific injury beyond a violation of her rights under the FDCPA. *Id.* at 2. Blaise contends that *Nettles* is instructive, as the Seventh Circuit found no Article III standing where the complaint did not allege that the statutory violations harmed the plaintiff in any way or created an appreciable risk of harm to the plaintiff. Mot. Remand at 4–5 (citing 983 F.3d at 898, 900). So too here, asserts Blaise, because there are no allegations in the complaint that Blaise suffered a concrete harm or appreciable risk of harm apart from the statutory violation itself. *Id.* at 5. Therefore, reasons Blaise, Transworld improperly removed this case to federal court, as the lawsuit belongs in state court.

Transworld, on the other hand, insists that the allegations in the complaint satisfy Article III's standing requirement. R. 10, Resp. It points to Blaise's allegations that, among other things, the third-party vendor and its employees impermissibly learned that Blaise owed a consumer debt, the identity of the creditor to whom the debt was allegedly owed, the age of the debt, and the amount of the debt, along with

Blaise's address and personal email address. *Id.* at 1–2 (citing Compl. ¶¶ 34–37). Blaise further alleges that she was dismayed and bewildered when she saw the Envelope, as her email address was communicated to whoever saw the Envelope. *Id.* at 2 (citing Compl. ¶ 41). Furthermore, Blaise alleges that she feared that her private email address would be seen and used third parties via fraud or identity theft, and that it indeed was viewed by a third party before she received the Letter. *Id.* (citing Compl. ¶¶ 42–43).

## I.    Transmission of Information to Third-Party Vendor

Transworld argues that the Eleventh Circuit in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016, 1020 (11th Cir.), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021) (*Hunstein* II)[2] found Article III standing "based upon plaintiff's exact alleged facts and injury." Resp. at 6. Furthermore, notes Transworld, four recent Northern District of Illinois decisions have analyzed Article III standing based on essentially the same facts and injuries as alleged in this case and have found Article III standing. *Id.* at 3–4 (citing *Thomas v. Unifin, Inc.*, 2021 WL 3709184, at *2 (N.D. Ill. Aug. 20, 2021); *Keller v. Northstar Location Servs.*, 2021 WL 3709183, at *2 (N.D. Ill. Aug. 20, 2021); *Liu v. Radius Glob. Sols., LLC*, 2021 WL 4167585, at *2 (N.D. Ill. Sept. 14, 2021); *Liu v. Pioneer Credit*

---

[2]The Eleventh Circuit originally decided the case on April 21, 2021. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021) (*Hunstein* I). *Hunstein* I was vacated and superseded on rehearing, in *Hunstein* II. *Hunstein* II has since been vacated so that the Eleventh Circuit can rehear the case *en banc*. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1103, 1104 (11th Cir. 2021) (*Hunstein* III).

6

*Recovery, Inc.*, No. 1:21-cv-02875, Dkt. 23 (N.D. Ill. Dec. 3, 2021)). The Court begins with *Hunstein* II.

In *Hunstein*, the plaintiff-consumer sued a debt collector for transmitting to a mailing vendor the plaintiff's name, outstanding debt balance, the fact that the debt resulted from the plaintiff's son's medical treatment, and his minor son's name. 17 F.4th at 1021. The vendor used the data to create, print, and mail a dunning[3] letter to the plaintiff. *Id.* The plaintiff alleged that in sending his personal information to the vendor, the debt collector violated 15 U.S.C. §§ 1692c(b) and 1692f, as well as state law. *Id.* In a case of first impression, the Eleventh Circuit held that the debt collectors' transmittal of the plaintiff's personal information to its dunning vendor constituted a communication within the meaning of 15 U.S.C. § 1692c(b). *Id.* at 1038. The court found that plaintiff's § 1692c(b) claim alleged a harm similar in kind to the common law tort of public disclosure of private facts, a subset of invasion of privacy, because both violations involve disclosing private information to a third party. *Id.* at 1023–29. The court reasoned that disclosing information about the plaintiff's debt and medical treatment behind the debt to the mailing vendor's employees was a harm of the same kind as that covered by the traditional tort. *Id.* at 1027–29. It did not matter to the court that the disclosure was significantly less widespread or less public than the disclosures typical of actionable public-disclosure-of-private-fact claims; it was enough that some disclosure occurred. *Id.* at 1027–28. The court also noted that Congress identified invasions of individual privacy as "one of the harms against

---

[3]A debt collection letter is also known as a dunning letter. *Miller v. Southwest Credit Sys., LP.*, 2019 WL 5208857, *2 (N.D. Ill. Oct. 16, 2019).

which the statute is directed," indicating that the judgment of Congress also favored standing. *Id*. at 1032.

In the aftermath of *Hunstein* I (but, with the exception of *Liu v. Pioneer Credit Recovery*, before *Hunstein* II was issued or vacated)*,* several courts in this District followed *Hunstein*'s reasoning and found Article III standing under facts similar to those in *Hunstein* and the case at hand. *See Thomas*, 2021 WL 3709184; *Keller*, 2021 WL 3709183; *Liu v. Radius Glob. Sols.*, 2021 WL 4167585, at *2; *Liu v. Pioneer Credit Recovery*, No. 1:21-cv-02875, Dkt. 23.

Shortly after *Hunstein* I (but before *Hunstein* II), the Supreme Court issued its decision in *TransUnion,* 141 S. Ct. 2190. In *TransUnion*, the plaintiffs were a class of individuals whose credit reports contained a false notice that the individual was considered a potential threat to national security. *Id*. at 2201–02. The plaintiffs sued TransUnion under the Fair Credit Reporting Act (FCRA) alleging several violations of the FCRA. *Id*. at 2202. In assessing standing, the Supreme Court divided the class into two subgroups based on whether the individual's credit report (with the misleading alert) had been disseminated to third parties. *Id*. at 2208–13. It then examined whether each subgroup had suffered an injury that bore a close relationship to a traditionally recognized harm. *Id*. The Supreme Court held that the plaintiffs whose credit reports had been disseminated to third parties had standing because the harm caused by the dissemination of a credit report with misleading information related closely to the reputational harm associated with defamation. *Id*. at 2208–09. On the other hand, the plaintiffs whose credit reports had not been

disseminated lacked standing. *Id.* at 2209–12. The Supreme Court reasoned that without any disclosure to a third party, these plaintiffs could not recover on a close-relationship-to-defamation theory because the mere existence of inaccurate information did not concretely injure them. *Id.* As the Seventh Circuit has since explained, "*TransUnion* makes clear that a risk of future harm, without more, is insufficiently concrete to permit standing to sue for damages in federal court." *Ewing v. Med-1 Solutions, LLC*, 24 F.4th 1146, 1152 (7th Cir. 2022) (citing *TransUnion*, 141 S. Ct. at 2212–13). One final point on *TransUnion*. In a footnote, the Supreme Court expressed its view of the mailing vendor theory:

> For the first time in this Court, the plaintiffs also argue that TransUnion "published" the class members' information internally—for example, to employees within TransUnion and to the vendors that printed and sent the mailings that the class members received. That new argument is forfeited. In any event, it is unavailing. Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications. Moreover, even the plaintiffs' cited cases require evidence that the defendant actually brought an idea to the perception of another, and thus generally require evidence that the document was actually read and not merely processed. That evidence is lacking here. In short, the plaintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently "close relationship" to the traditional defamation tort to qualify for Article III standing.

*Id.* at 2210 n.6 (internal quotation marks and citations omitted).

As noted above, *see supra* n.2, after the Supreme Court's *TransUnion* decision, the Eleventh Circuit vacated its decision in *Hunstein* I. *Hunstein* II, 17 F.4th 1016. In *Hunstein* II, the Eleventh Circuit reaffirmed its prior determination that the alleged § 1692c(b) violation gave rise to a concrete injury in fact under Article III

standing. *Id.* at 1033. In a 2 to 1 decision, the majority concluded that the plaintiff had the requisite standing to sue "[b]ecause (1) § 1692c(b) bears a close relationship to a harm that American courts have long recognized as cognizable and (2) Congress's judgment indicates that violations of § 1692c(b) constitutes a concrete injury." *Id.* That opinion, however, was also vacated pending rehearing *en banc*. *Hunstein* III, 17 F.4th 1103, 1104. As such, *Hunstein* is of questionable persuasive value.

The Seventh Circuit has yet to address standing in the context of a §1692c(b) claim. As noted above, and as cited by Transworld, several courts in this District followed *Hunstein's* reasoning. Apart from one, those cases, however, were decided before the Eleventh Circuit vacated its decision in *Hunstein*. On the other hand, most courts in this District and within the Seventh Circuit that have addressed the issue post-*TransUnion* (and for the most part, post-*Hunstein II*) have found no Article III standing. *See Patni v. Resurgent Cap. Servs., L.P.*, 2022 WL 1567069 (N.D. Ill. May 18, 2022); *Rembert v. Am. Coradius Int'l, LLC*, 2022 WL 1211510 (N.D. Ill. Apr. 25, 2022); *Liu v. MRS BPO, LLC*, 2021 WL 5630764 (N.D. Ill. Nov. 30, 2021); *Quaglia v. NS193, LLC*, 2021 WL 7179621 (N.D. Ill. Oct. 12, 2021); *see also Nabozny v. Optio Sols., LLC*, 2022 WL 293092, at *3 (W.D. Wis. Feb. 1, 2022). *But see Liu v. Pioneer Credit Recovery, Inc.*, No. 1:21-cv-02875, Dkt. 23 (N.D. Ill. Dec. 3, 2021). In large part, those courts found that there was no publicity as required by the common law tort of publicity given to private life because: (1) the plaintiff alleged only that the information was communicated to a third-party vendor; therefore, the plaintiff's claim did not bear a close relationship to the claim of publicity given to private life,

*see Patni*, 2022 WL 1567069, at *2; *Liu v. MRS BPO*, 2021 WL 5630764, at *4; *Nabozny*, 2022 WL 293092, at *2–4; or (2) a finding of injury in the mailing-vendor context is inconsistent with the FDCPA's intended purpose of preventing debt collectors from utilizing truly offensive means to collect as debt, *see Rembert*, 2022 WL 1211510, at *3; *Quaglia*, 2021 WL 7179621, at *3; *Nabozny*, 2022 WL 293092, at *4. The Court agrees with the reasoning of the majority of the post-*TransUnion* cases decided in this District.[4]

In coming to its conclusion, the court in *Liu v. MRS BPO* looked to the dissent in *Hunstein II*. 2021 WL 5630764, at *4 (citing *Hunstein II*, 17 F.4th at 1038–48) (Tjoflat, J., dissenting)). This Court similarly finds the *Hunstein II* dissent's reasoning persuasive, despite that decision having been vacated. The dissenting judge, in rejecting the majority's conclusion, found that communicating the plaintiff's information to a third-party vendor did not satisfy the publicity requirement of the common-law tort of public disclosure of private facts. *Hunstein II*, 17 F.4th at 1043 (Tjoflat, J., dissenting). The dissent noted that "[c]ommunication could lead to publicity if the communication was to a large group of people, such as to be public. But communication can also be private, and just because it could be public does not mean that it actually was public." *Id.* Additionally, the dissent found that, in enacting the FDCPA, Congress did not intend to prohibit *all* transmissions of information to third parties, as other sections of the FDCPA require debt collectors to send

---

[4] The majority of district courts that have addressed the issue nationwide have determined that the mailing vendor theory does not establish a concrete injury. *See Barclift v. Keystone Credit Servs., LLC*, 2022 WL 444267, at *8 (E.D. Pa. Feb 14, 2022) (collecting cases).

information to debtors about their debts to *benefit* debtors, which the dissent noted implicitly support the use of mail vendors. *Id.* at 1046 (citing § 1692g). The dissent summarized its position:

> *TransUnion* stands for the proposition that the *Spokeo* analysis for intangible harms based on the violation of a statute—that is, looking at history and the judgment of Congress—is individualized for every plaintiff's injury. Just because some plaintiffs' injuries will have a common-law analogue and are the very kind of injuries Congress was trying to prevent does not mean that other plaintiffs, who allege a violation of the very same statute, will get a golden ticket to standing without also satisfying what *Spokeo* requires.

*Id.* at 1040. The Court agrees, and finds that no publicity has occurred, just communication with a mail vendor, which is not a harm at which Congress aimed by enacting the FDCPA. Accordingly, the Court finds that Transworld has not met its burden of establishing Blaise's standing based on Transworld's disclosure of her personal information to the third-party mailing vendor.

## II.      Disclosure of Email Address on the Envelope

Transworld also argues, in passing, that the Court has subject matter jurisdiction over Blaise's § 1692f claim based on the improper disclosure of her email address on the Envelope. Resp. at 4 (citing *Preston v. Midland Credit Management, Inc.* 948 F.3d 772, 780–84 (7th Cir. 2020)). The Court now turns to this brief, if not undeveloped argument.

Section 1692f(8) prohibits a debt collector from "[u]sing any language or symbol, other than the debtor collector's address, on any envelope when communicating with a consumer by use of the mails . . ., except that a debt collector

may use his business name if such name does not indicate that he is in the debt collection business." 15 U.S.C. §1692f(8).

The only cases cited by Transworld, *Preston v. Midland Credit Management* and *Lueck v. Bureaus, Inc.*, 2021 WL 4264368, at *5 (N.D. Ill. Sept. 20, 2021) do not support Transworld's standing argument. In *Preston*, the Seventh Circuit found that the use of language or symbols other than a consumer's address—specifically the phrases "TIME SENSITIVE DOCUMENT"—on an envelope violated § 1692f(8). 948 F.3d at 784. However, as Transworld acknowledges, the Seventh Circuit in *Preston* had no occasion to address whether the mere presence of that phrase on envelopes was sufficient to confer Article III standing. Resp. at 4 (citing *Preston*, 948 F.3d 780–84).

Next, Transworld argues that Blaise, unlike the plaintiff in *Lueck*, alleges a disclosure of private information by alleging that Transworld included her email address on the Envelope and hence, sufficiently pled a concrete injury. *Id.* at 8–9. In *Lueck*, the court determined that the plaintiff lacked standing to pursue a § 1692f(8) claim based on the inclusion of "Personal & Confidential" on an envelope because the court was "not persuaded that [the plaintiff] has alleged a disclosure of private information." 2021 WL 4264368, at *4.

Blaise did not address subject matter jurisdiction over the email disclosure claim in her motion to remand, *see* Mot. Remand, and she did not file a reply in support of remand, instead informing the Court that she "stand[s] on the arguments made in [her] Motion to Remand." R. 12, Pl.'s Statement at 1. Despite the short shrift

13

both parties give to this argument, the Court must engage with it, as it pertains to the Court's subject matter jurisdiction. *See Olson v. Bemis Co.*, 800 F.3d 296, 300 (7th Cir. 2015) ("Although the parties did not brief the issue of jurisdiction, federal courts have an independent obligation at each stage of the proceedings to ensure that they have subject matter jurisdiction over the dispute.") (internal quotation marks and citations omitted).

As discussed above, "a 'disclosure of private information' is a concrete, albeit intangible, harm—one that has been 'traditionally recognized as providing a basis for lawsuits in American courts.'" *Lueck*, 2021 WL 4264368, at *4 (quoting *TransUnion*, 141 S. Ct. at 2204 and citing *Dancel v. Groupon, Inc.*, 2018 WL 11195080, at *2 (N.D. Ill. Oct. 10, 2018) ("[T]he dissemination to a third party of information in which a person has a right to privacy is a sufficiently concrete injury for standing purposes.") (citing *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910 (7th Cir. 2017))). Here, Blaise alleges in relevant part that her "personal email address . . . was wholly visible from the outside of the envelope when viewed," that she "was dismayed and bewildered when she saw the Envelope . . . [and] feared that her private email address would be seen and used by third parties with which she had no connection, to commit fraud or identity theft." Compl. ¶¶ 38, 41–42. She also alleges that "a third-party viewed the email address before the Letter was received by [Blaise.]" *Id.* ¶ 43.

14

However, she does not allege that the third party who viewed her email address used her email address in any way, and certainly not in a way that harmed her.

Courts in this District have held that inadvertent disclosure via a data hack of a plaintiff's email address—along with other personal information such as name and date of birth—is insufficient to confer Article III standing, where the plaintiff was unable to identify any consequences of the data breach. *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 847 (N.D. Ill. 2020) (determining that disclosure of such personal information does not implicate the same privacy and identity-theft concerns as the disclosure of a credit and debit card information, which the Seventh Circuit found to be sufficient to confer standing *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693–94 (7th Cir. 2015)); *In re Vtech Data Breach Litig.*, 2017 WL 2880102, *1–5 (N.D. Ill. July 5, 2017). And, as noted above, Transworld gives short shrift to this argument, making no attempt to explain how the disclosure of Blaise's email address on the Envelope and viewed by an unknown third party—with no allegations about any harm caused by such viewing—is akin to a common law tort such as the public disclosure of private facts. Along those lines, as noted above, Transworld does not cite—and the Court is not aware of any—cases applying state law in which a plaintiff has sustained an invasion of privacy claim based upon the disclosure of a personal email address only; to the contrary, courts have found that disclosure of information like an email address is insufficient to sustain such a claim. *See, e.g.*, *White v. Citywide Title Corp.*, 2018 WL 5013571, at *3 (N.D. Ill. Oct. 16, 2018) (dismissing plaintiff's public disclosure of private facts claim where defendant "solicited

[plaintiff's] private information, including his home address, email address, birthdate, and social security number, and then allowed his information to fall into the hands of third parties," finding that nothing in the complaint allowed the court to reasonably infer that the defendant gave publicity to plaintiff's private information) (citing *Miller v. Motorola, Inc.*, 560 N.E.2d 900, 902 (1990) (to state a cause of action for public disclosure of private facts, "the plaintiff must plead and prove that (1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; and (3) the matter made public was such as to be highly offensive to a reasonable person")).

Another court in this District recently addressed a similar 1692f(8) claim, in which the plaintiff alleged that the "mini-Miranda" statement included in the debt collection letter mailed by the defendant was visible in normal light to anyone viewing the envelope. *Stone v. Med. Bus. Bureau, LLC*, 2021 WL 2453080, at *1 (N.D. Ill. June 16, 2021). The plaintiff alleged that his "reputation has been damaged or faces a real risk of being damaged due to Defendant's conduct . . . [because] "[a] number of individuals, besides the Plaintiff and his Wife, now have now seen the plain contents of this communication that it was an attempt to collect a debt against Plaintiff." *Id.* at *2 (internal quotation marks omitted). The court disagreed, finding the allegations insufficient to establish a concrete, particularized, and non-hypothetical injury. *Id.* The fact that the debt collector letter could potentially be seen through the envelope, reasoned the court, is a remote harm and "there is no allegation that makes this a

plausible injury. *Id.* at *6. Therefore, the plaintiff lacked standing to bring a § 1692f(8) claim. *Id.*

On the other hand, the Third Circuit has held that disclosure on the outside of an envelope of a debtor's account information—in the form of a QR code—"'implicates core privacy concerns'" sufficient to confer standing because the "debt collector has 'displayed core information relating to the debt collection'" that is "susceptible to privacy intrusions.'" *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279–80 (3d Cir. 2019) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 304–05 (3d Cir. 2014) and citing *St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351, 355, 358 (3d Cir. 2018)); *see also Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625, 627 (3d Cir. 2021). However, unlike the information included on the envelopes in the line of Third Circuit cases (and even the "mini-Miranda" statement in *Stone*, 2021 WL 2453080), Blaise's email address does not relate to the collection of her debt or identify her as a debtor, and thus does not implicate the same privacy concerns, *see Kylie S.*, 475 F. Supp. 3d at 847; *In re Vtech Data Breach Litig.*, 2017 WL 2880102, at *1–5. Therefore, although Transworld violated § 1692f(8) by including her email on the Envelope, a statutory violation alone is insufficient to confer standing. *See Lueck*, 2021 WL 4264368, at *5 (citing *Larkin*, 982 F.3d at 1064). Thus, the Court finds that Transworld has not established standing based on Blaise's allegation that the outside of the Envelope included Blaise's email address—even with the allegations that one unknown third party saw it and Blaise feared third parties would use it to commit fraud or identity theft—without any claim that any

third party actually used Blaise's email address to harm her. Therefore, Blaise's envelope disclosure claim must be remanded. This finding is bolstered by the Seventh Circuit's instruction that "[a]ny doubts in favor of federal court jurisdiction favors remand." *Quaglia*, 2021 WL 7179621, at *1 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)); *Schur*, 577 F.3d at 758.

## Conclusion

For the foregoing reasons, the Court grants Blaise's motion to remand this case to the Circuit Court of Cook County, Illinois [8]. The Clerk's Office is directed to remand this case to the Circuit Court of Cook County, Illinois forthwith. This civil case is terminated.

Franklin U. Valderrama
United States District Judge

Dated: August 30, 2022

18